**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable William J. Martínez**

Civil Action No. 15-cv-01410-WJM

GREGORY OWENS,

      Applicant,

v.

DAVID ZUPAN, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER TO DISMISS IN PART

---

      Applicant, Gregory Owens, is a prisoner in the custody of the Colorado Department of Corrections. Mr. Owens initiated this action by filing pro se an Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1). On July 29, 2015, Mr. Owens filed an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 6) (the "Amended Application"). Mr. Owens is challenging the validity of his conviction in Denver District Court case number 06CR7406.

      On July 30, 2015, Magistrate Judge Gordon P. Gallagher ordered Respondents to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those defenses in this action. On August 13, 2015, Respondents filed their Pre-Answer

Response (ECF No. 11) arguing that, with one exception, Mr. Owens' claims are procedurally defaulted.  On September 8, 2015, Mr. Owens filed a Pre-Answer Reply (ECF No. 12).

The Court must construe the Amended Application and other papers filed by Mr. Owens liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the Court will dismiss the action in part.

## I.  BACKGROUND

The Colorado Court of Appeals on direct appeal described the relevant factual background for Mr. Owens' conviction as follows:

> I.S. lived in his Denver home with defendant, who was his son, and P.F., who was I.S.'s caretaker.  When relatives of I.S. were unable to contact him for several days, one of the relatives called the police and asked them to check on I.S.  The relative, who usually spoke with I.S. daily, told police officers that she had not spoken with I.S. or seen him in a week and a half.  She also told them that she had seen defendant driving I.S.'s car, which was an unusual occurrence given that I.S. did not let others drive his car.

> Upon arriving for the welfare check, the officers detected an odor coming from the house consistent with that of a decomposing body. The officers knocked on the doors, but received no response.  They tried looking through the windows, but could not see anything.  The officers called the relative who had initially requested the welfare check. She told them that a few days earlier, she had gone to visit I.S., but defendant would not let her in.  The officers also learned that I.S. was elderly, was confined to a wheelchair, and had health issues.  Ten minutes after the responding officers arrived, their sergeant arrived and also detected the decomposition odor.  The officers forced entry, and found I.S. dead in the first floor living room area with blankets covering him.  Finding no one else, they left and secured the house.

While the officers were waiting outside, they began the process of obtaining a search warrant.  A bystander told the sergeant that P.F. also lived in the house and had not been seen or heard from in a week and a half.  The officers entered the house again to search for P.F. They found her body, also in a state of decomposition, in a basement storage room.  The officers did not have a warrant to enter the house in either instance.

Defendant was arrested later that night.  He was charged with two counts of first degree murder after deliberation, and he pleaded not guilty by reason of insanity.  Defendant was acquitted of first degree murder after deliberation of I.S., but was found guilty of first degree murder after deliberation of P.F.

*People v. Owens*, No. 08CA1834, slip op. at 1-2 (Colo. App. May 16, 2013) (unpublished) (ECF No. 11-4 at 3-4).  The judgment of conviction was affirmed on direct appeal.  *See id.*  On June 16, 2014, the Colorado Supreme Court denied Mr. Owens' petition for writ of certiorari on direct appeal.  (*See* ECF No. 11-2.)

On August 11, 2014, and again on August 20, 2014, Mr. Owens filed in the trial court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  (*See* ECF No. 11-1 at 8.)  On September 23, 2014, the trial court entered an order denying denied the Rule 35(c) motion.  (*See id.* at 7.)  Mr. Owens did not appeal.

On October 27, 2014, Mr. Owens filed in the trial court an amended Rule 35(c) motion.  (*See id.*)  On February 27, 2015, the trial court denied the amended Rule 35(c) motion as successive.  (*See id.*)  Mr. Owens did not appeal.

Mr. Owens asserts the following fifteen claims for relief in the Amended Application:  the prosecution's misstatement of law during closing arguments regarding the affirmative defense of insanity, and the trial court's failure to correct it after

3

objection, violated his due process rights to a fair trial and to present a defense (claim one); the prosecution's use of his pre-arrest silence as substantive evidence of guilt and sanity violated his Fifth Amendment privilege against self-incrimination (claim two); counsel was ineffective by arguing the affirmative defense of insanity rather than the affirmative defense of impaired mental condition (claim three); counsel was ineffective by failing to argue the affirmative defense of self-defense (claim four); counsel was ineffective by failing to examine adequately a defense expert witness (claim five); counsel was ineffective by advising Mr. Owens not to testify (claim six); counsel was ineffective by failing to keep Mr. Owens apprised of the investigation, discovery, and trial strategies (claim seven); counsel was ineffective by failing to explore viable avenues of defense (claim eight); counsel was ineffective by failing to communicate properly with Mr. Owens (claim nine); counsel was ineffective by failing to challenge several remarks made by the prosecution (claim ten); counsel was ineffective in allowing all of the African-Americans to be excluded from the jury panel (claim eleven); counsel was ineffective by failing to advance evidence found during a psychiatric evaluation (claim twelve); counsel was ineffective in failing to investigate or present evidence regarding the victim's criminal history (claim thirteen); the trial court erred in failing to suppress statements made during custodial interrogation in violation of his Fifth Amendment rights (claim fourteen); and he was denied due process and the effective assistance of counsel when the prosecutor allowed the police to misrepresent material facts in front of the jury without objection (claim fifteen).

## II.  ONE-YEAR LIMITATION PERIOD

Respondents do not contend that this action is barred by the one-year limitation period in 28 U.S.C. § 2244(d).

## III.  EXHAUSTION OF STATE REMEDIES

Respondents concede that claim one is exhausted.  However, Respondents contend that every other claim is procedurally defaulted.  In particular, Respondents contend that claim two is procedurally defaulted because, although the claim was raised on direct appeal, Mr. Owens failed to properly preserve the claim for review.  Respondents contend that claims three through fifteen are procedurally defaulted because those claims were not presented to the Colorado appellate courts either on direct appeal or in the state court postconviction proceedings.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  Dever, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.

*Picard v. Connor*, 404 U.S. 270, 278 (1971); *see* also *Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989).  Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing he has exhausted all available state remedies for each particular claim.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).  A blanket statement that state remedies have been exhausted does not satisfy this burden.  *See Olson v. McKune*, 9 F.3d 95 (10th Cir. 1993); *see also Fuller v. Baird*, 306 F. App'x 430, 431 n.3 (10th Cir. 2009) (stating that a bald assertion unsupported by court records is insufficient to demonstrate state remedies are exhausted).

Respondents are correct that Mr. Owens did not fairly present any claims to the Colorado appellate courts in the postconviction proceedings because he did not appeal from the denial of the postconviction Rule 35(c) motions.  Although Mr. Owens argues in his reply to the Pre-Answer Response that the claims he raised in his postconviction Rule 35(c) motions are exhausted because he fairly presented those claims to the trial court, the exhaustion requirement is not satisfied by fairly presenting a claim to the trial

court. As noted above, fair presentation requires that the federal issue be presented properly "to the highest state court." *Dever*, 36 F.3d at 1534. Therefore, even assuming Mr. Owens raised each of his postconviction claims in the trial court, he fails to satisfy his burden of demonstrating he exhausted state remedies for any claims in the state court postconviction proceedings.

Mr. Owens did, however, file a direct appeal from the judgment of conviction. Thus, to determine whether Mr. Owens has exhausted state remedies, the Court must consider whether any claims in the Amended Application were fairly presented to the Colorado appellate courts on direct appeal. Mr. Owens raised three claims on direct appeal arguing that: (1) the prosecution's misstatement of law during closing argument regarding the affirmative defense of insanity, and the trial court's refusal to correct the misstatement following a defense objection, violated his due process rights to a fair trial and to present a defense; (2) the prosecution's use of his pre-arrest silence as substantive evidence of guilt and sanity violated his Fifth Amendment privilege against self-incrimination and the Colorado Rules of Evidence; and (3) the warrantless entry and search of his residence was unconstitutional. (*See* ECF No. 11-5 at 11.)

Claims one and two in the Amended Application mirror claims one and two in Mr. Owens' direct appeal opening brief. Mr. Owens does not raise any claim in the Amended Application challenging the warrantless entry and search of his residence similar to claim three in his direct appeal opening brief. Therefore, claims one and two in the Amended Application are the only claims that arguably are exhausted. As noted above, Respondents concede that claim one is exhausted, but they contend that claims two through fifteen are procedurally defaulted.

## IV.  PROCEDURAL DEFAULT

Federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).  Even if an unexhausted claim has not actually been raised and rejected by the state courts on a procedural ground, the claim still is subject to an anticipatory procedural default if it is clear that the claim would be rejected because of an independent and adequate state procedural rule.  *See Coleman*, 501 U.S. at 735 n.1.

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision."  *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998).  A state procedural ground is adequate if it is "applied evenhandedly in the vast majority of cases."  *Id*.  Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns.  *See Coleman*, 501 U.S. at 730.

Mr. Owens' *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice to overcome a procedural default.  *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).  To demonstrate cause for his procedural default, Mr. Owens must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "Objective factors that constitute cause include interference by officials that makes compliance

8

with the State's procedural rule impracticable, and a showing that the factual or legal

basis for a claim was not reasonably available to [applicant]." *McCleskey v. Zant*, 499

U.S. 467, 493 94 (1991) (internal quotation marks omitted).  If Mr. Owens can

demonstrate cause, he also must show "actual prejudice as a result of the alleged

violation of federal law." *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of

justice occurs when "a constitutional violation has probably resulted in the conviction of

one who is actually innocent." *Murray*, 477 U.S. at 496.

## A.    Claims Three Through Fifteen

As discussed above, Mr. Owens fails to demonstrate he fairly presented claims

three through fifteen to the highest state court either on direct appeal or in the

postconviction Rule 35(c) proceedings.  However, the Court may not dismiss those

claims for failure to exhaust state remedies if he no longer has an adequate and

effective state remedy available to him.  *See Castille*, 489 U.S. at 351.  Respondents

contend, and the Court agrees, that Mr. Owens no longer has an adequate and

effective state remedy available to him to raise claims three through fifteen.  Rules

35(c)(3)(VI) and (VII) of the Colorado Rules of Criminal Procedure provide that, with

limited exceptions not applicable to Mr. Owens, the state court must dismiss any claim

raised and resolved in a prior appeal or postconviction proceeding as well as any claim

that could have been presented in a prior appeal or postconviction proceeding.

Therefore, it is clear that Mr. Owens may not return to state court to pursue his

unexhausted claims.  Any claims that actually were raised in one of the Rule 35(c)

motions would be dismissed as successive in a new motion and any claim that was not

actually raised would be dismissed because the claim could have been raised either on

direct appeal or in the Rule 35(c) proceedings.

The Court notes that Rules 35(c)(3)(VI) and (VII) are independent because they rely on state rather than federal law.  The rules also are adequate because they are applied evenhandedly by Colorado courts.  *See, e.g., People v. Vondra*, 240 P.3d 493, 494 (Colo. App. 2010) (applying Crim P. Rules 35(c)(3)(VI) and (VII) to reject claims that were or could have been raised in a prior proceeding).  Finally, Mr. Owens presents no argument that Rules 35(c)(3)(VI) and (VII) are not independent and adequate.

Mr. Owens also fails to present any argument to demonstrate either cause and prejudice for his procedural default of claims three through fifteen or that a failure to consider the merits of any of those claims will result in a fundamental miscarriage of justice.  Therefore, claims three through fifteen are procedurally barred.

**B.     Claim Two**

A different analysis applies to determine whether claim two is procedurally defaulted because that claim actually was raised on direct appeal.  Respondents contend claim two is procedurally defaulted because Mr. Owens failed to properly preserve the claim for review by failing to object at trial, which led the Colorado Court of Appeals to review the claim only for plain error.

A state court's review of an issue for plain error "raises [a] threshold question[] about the effect of state plain-error review on procedural bar."  *Cargle v. Mullins*, 317 F.3d 1196, 1205 (10th Cir. 2003).

> [T]he question is: does a state court's plain-error review of an issue otherwise waived for lack of a trial objection constitute a merits decision under *Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed.2d 308 (1989), thus negating application of procedural bar, or does [the state court's] use of the heightened standard of plain error constitute the

enforcement of a state waiver rule under *Harris*, thus necessitating
application of procedural bar?

*Id*.  The answer to this question "depends on the substance of the plain-error

disposition."  *Id*.

> A state court may deny relief for a federal claim on plain-error review
> because it finds the claim lacks merit under federal law.  In such a case,
> there is no independent state ground of decision and, thus, no basis for
> procedural bar. . . .  On the other hand, a state court could deny relief for
> what it recognizes or assumes to be federal error, because of the
> petitioner's failure to satisfy some independent state law predicate.  In
> such a case, that non-merits predicate would constitute an independent
> state ground for decision which would warrant application of
> procedural-bar principles on federal habeas.

*Id*. (internal citation omitted).  If it is not clear whether the substance of the state court's

plain-error review was merits or non-merits based, the Court must assume the state's

review was merits based.  *See Douglas v. Workman*, 560 F.3d 1156, 1178 (10th Cir.

2009).

Mr. Owens argued on direct appeal that three references at trial to his pre-arrest

silence, one each during the prosecution's opening statement, the testimony of the

arresting officer, and the prosecution's closing argument, were used as substantive

evidence of his guilt and sanity.  The Colorado Court of Appeals reasoned as follows in

rejecting the claim:

> Defendant next contends that the prosecution used his pre-arrest
> silence as substantive evidence of his guilt and sanity, in violation of his
> Fifth Amendment privilege against self-incrimination and CRE 401 and
> 403.  We disagree.
>
> A.    Standard of Review and Legal Authority

Because defendant did not object to the prosecutor's use of his pre-arrest silence during opening statement or closing argument, and objected to witness testimony on grounds different from those he now asserts, we review for plain error. *Id.* at 14. We will reverse only if the error "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

Both the United States Constitution and the Colorado Constitution provide that no person shall be compelled to testify against himself or herself in any criminal proceeding. U.S. Const. amend. V; Colo. Const. art. II, § 18.

A division of this court has concluded that the use of pre-arrest silence when a defendant does not testify "impermissibly burdens the privilege guaranteed by the Fifth Amendment and thus is inadmissible in the prosecution's case-in-chief as substantive evidence of guilt or sanity." *People v. Welsh*, 58 P.3d 1065, 1071 (Colo. App. 2002) (*Welsh I*), aff'd, 80 P.3d 296 (Colo. 2003) (*Welsh II*).

However, on review, the supreme court declined to address this constitutional issue. *Welsh II*, 80 P.3d at 299. Rather, the supreme court affirmed the division's reversal on an evidentiary basis, determining that the use of the defendant's pre-arrest silence violated CRE 401 and 403. Id. The court concluded that rebuttal evidence of a defendant's pre-arrest silence must "possess sufficient probative value as to the defendant's sanity at the time of the criminal act so as to exceed any unfair prejudicial impact that may be caused by the testimony." *Id.* at 306.

## B. Analysis

Defendant argues that three references to his pre-arrest silence were used as substantive evidence of his guilt and sanity, and thus were inadmissible under CRE 401 and 403 and violated his constitutional privilege against self-incrimination. Those three references are as follows:

(1)   During opening statement, the prosecutor said, "An officer went up to [defendant] and asked him his name many times. You will hear that the defendant decided to say nothing, or give his name until he was in handcuffs."

(2)   During direct examination by the prosecution, the arresting officer testified to the following about defendant: "I asked

him his name several times.  He failed to answer any of those times.  He looked at the ground in an evasive manner.  He wouldn't look at me.  Wouldn't answer."  The following dialogue then took place:

Prosecutor:  [Y]ou said he was looking down at the ground. Did he appear to have any confusion to you about what his name was?

Defense Counsel:  Objection. . . .  Speculation.

The Court:  It's based upon his perception.  I'll overrule that.

Prosecutor:  Let me restate it.  Based on your perception of him when you were asking the questions of him, what his name was, did he appear to have any confusion as to your questions?

Officer:  My perception was that there was no confusion at all.  It seemed purely evasive.  More that he didn't want to answer than that it was confusion.

(3)    During closing argument, the prosecutor stated the following:

[Defendant] very clearly knew what was going on.  He knew why he didn't call the police because he knew they would come.  He knew why he told his family what he did, his perceptions of reality were clear that day and they are not attributable to the ingestion of alcohol or drugs and we know from his own mouth that he used crack prior to this and subsequent to this.  If [defendant] had called the police on the date of the offense, or when this happened, we would know.  He could have been tested, his blood tested just like it was for [P.F.], just like it was for [I.S.]. The fact that he didn't call, there's no way to find out one way or another, other than his word.

To the extent that any of these references were inadmissible on constitutional or evidentiary grounds, we conclude that any error in admitting them was not plain.

13

These references were a minor part of an extensive six-day trial. The prosecution did not repeatedly refer to or emphasize the evidence throughout the trial, and the arresting officer was the only witness who testified in relatively brief testimony about defendant's refusal to give his name when asked.  Indeed, the officer's testimony did little more than set forth the events surrounding defendant's arrest.  See *People v. Quintana*, 996 P.2d 146 150 (Colo. App. 1998) (concluding that any prejudice from an officer's testimony about the defendant's silence was slight because the testimony was brief and "it merely set forth the events surrounding [the] defendant's arrest"), disapproved of on other grounds by *People v. Harlan*, 8 P.3d 448, 474 (Colo. 2000), *overruled by Miller*, 113 P.3d at 749.  These circumstances are unlike those in *Welsh*, where the prosecution mentioned the defendant's silence in the opening statement, presented six witnesses to testify to the defendant's silence, and suggested during closing argument that the defendant's silence indicated that she was sane.  *Welsh II*, 80 P.3d at 300-01; *Welsh I*, 58 P.3d at 1069.

In addition, as discussed above, Dr. Diamond - the only expert witness to testify to the issue of defendant's sanity - concluded that defendant was sane at the time the murders occurred.  In a trial where defendant's mental state was the main issue, Dr. Diamond's medical opinion provided great weight to support a finding that defendant was sane.

Furthermore, no objection was made to the prosecutor's references in the opening statement or closing argument, and while defense counsel objected to the witness's testimony based on the question's calling for speculation, no objection was made based on improper use of defendant's silence.  *See Domingo-Gomez v. People*, 125 P.3d 1043, 1054 (Colo. 2005) ("The lack of an objection may demonstrate the defense counsel's belief that live argument, despite its appearance in a cold record, was not overly damaging.") (quoting *Rodriguez*, 794 P.2d at 972).

For these reasons, any error did not "so undermine[] the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction," and thus reversal is not required.  *Hagos*, 14.

(ECF No. 11-4 at 10-15.)

As this excerpt demonstrates, the Colorado Court of Appeals assumed the existence of a federal constitutional violation but determined the assumed violation did not rise to the level of plain error.  Under these circumstances, the state court's plain-error review "constitute[s] an independent state ground for decision which would warrant application of procedural-bar principles on federal habeas." *Cargle*, 317 F.3d at 1206.  Furthermore, Mr. Owens does not argue that the state court's plain-error review of claim two constitutes a merits decision of the federal constitutional claim presented. Therefore, the Court finds that claim two also is procedurally defaulted. *See Farris v. Broaddus*, 418 F. App'x 694, 697 (10th Cir. 2011) (finding that Colorado's plain-error review regime was sufficient to supply an independent and adequate basis for application of procedural bar principles).

Mr. Owens fails to present any reasoned argument to demonstrate either cause and prejudice or a fundamental miscarriage of justice with respect to claim two. Therefore, claim two also is procedurally barred.

### V.  CONCLUSION

In summary, Respondents concede that claim one is exhausted.  The Court will dismiss claims two through fifteen because those claims are unexhausted and procedurally barred.  Accordingly, it is

**ORDERED** that claims two through fifteen in the Amended Application are dismissed as unexhausted and procedurally barred.  It is

**ORDERED** that within thirty days Respondents are directed to file an answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully

15

addresses the merits of the remaining claim.  It is further

      **ORDERED** that within thirty days of the filing of the answer Applicant may file a

reply, if he desires.

      Dated this 14th day of October, 2015.

BY THE COURT:

_____

William J. Martínez
United States District Judge