**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable William J. Martínez**

Civil Action No. 15-cv-01410-WJM

GREGORY OWENS,

      Applicant,

v.

DAVID ZUPAN, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 6) (the "Amended Application") filed *pro se* by Applicant Gregory Owens. Respondents have filed an Answer to Application Under 28 U.S.C. § 2254 (ECF No. 22) ("the Answer"). Mr. Owens has not filed a traverse despite being given an opportunity to do so. After reviewing the record, including the Amended Application, the Answer, and the state court record, the Court FINDS and CONCLUDES that the Amended Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

Mr. Owens is challenging the validity of his conviction and sentence in Denver District Court case number 06CR7406. The Colorado Court of Appeals on direct appeal described the relevant background for Mr. Owens' conviction as follows:

I.S. lived in his Denver home with defendant, who was his son, and P.F., who was I.S.'s caretaker.  When relatives of I.S. were unable to contact him for several days, one of the relatives called the police and asked them to check on I.S.  The relative, who usually spoke with I.S. daily, told police officers she had not spoken with I.S. or seen him in a week and a half.  She also told them that she had seen defendant driving I.S.'s car, which was an unusual occurrence given that I.S. did not let others drive his car.

Upon arriving for the welfare check, the officers detected an odor coming from the house consistent with that of a decomposing body.  The officers knocked on the doors, but received no response.  They tried looking through the windows, but could not see anything.  The officers called the relative who had initially requested the welfare check.  She told them that a few days earlier, she had gone to visit I.S. but defendant would not let her in.  The officers also learned that I.S. was elderly, was confined to a wheelchair, and had health issues.  Ten minutes after the responding officers arrived, their sergeant arrived and also detected the decomposition odor.  The officers forced entry, and found I.S. dead in the first floor living room area with blankets covering him.  Finding no one else, they left and secured the house.

While the officers were waiting outside, they began the process of obtaining a search warrant.  A bystander told the sergeant that P.F. also lived in the house and had not been seen or heard from in a week and a half.  The officers entered the house again to search for P.F.  They found her body, also in a state of decomposition, in a basement storage room.  The officers did not have a warrant to enter the house in either instance.

Defendant was arrested later that night.  He was charged with two counts of first degree murder after deliberation, and he pleaded not guilty by reason of insanity. Defendant was acquitted of first degree murder after deliberation of I.S., but was found guilty of first degree murder after deliberation of P.F.

*People v. Owens*, No. 08CA1834, slip op. at 1-2 (Colo. App. May 16, 2013)

(unpublished) (ECF No. 11-4 at 3-4).  The judgment of conviction was affirmed on direct

2

appeal.  *See id.*  On June 16, 2014, the Colorado Supreme Court denied Mr. Owens' petition for writ of certiorari on direct appeal.  (*See* ECF No. 11-2.)

On August 11, 2014, and again on August 20, 2014, Mr. Owens filed in the trial court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  (*See* ECF No. 11-1 at 8.)  On September 23, 2014, the trial court entered an order denying denied the Rule 35(c) motion.  (*See id.* at 7.)  Mr. Owens did not appeal.

On October 27, 2014, Mr. Owens filed in the trial court an amended Rule 35(c) motion.  (*See id.*)  On February 27, 2015, the trial court denied the amended Rule 35(c) motion as successive.  (*See id.*)  Mr. Owens again did not appeal.

The instant action was commenced on July 2, 2015, and Mr. Owens asserts fifteen claims for relief in the Amended Application.  The Court previously entered an Order to Dismiss in Part (ECF No. 19) dismissing claims two through fifteen because those claims are unexhausted and procedurally barred.  Therefore, only claim one in the Amended Application remains to be considered on the merits.  Mr. Owens contends in claim one that the prosecution's misstatement of the law during closing arguments regarding the affirmative defense of insanity, and the trial court's failure to correct it after objection, violated his due process rights to a fair trial and to present a defense.

## II.  STANDARDS OF REVIEW

The Court must construe the Amended Application liberally because Mr. Owens is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court

should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Owens bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Owens seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry under § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from
> [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669
> [(10th Cir. 2006)] (internal quotation marks and brackets
> omitted) (quoting *Williams*, 529 U.S. at 405).  "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id*. at
> 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable."  *Id*. at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation

omitted).  In conducting this analysis, the Court "must determine what arguments or

theories supported or . . . could have supported[] the state court's decision" and then

"ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court."

*Id*. at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*,

563 U.S. 170, 180-81 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Owens bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave

7

doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual

equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.  The Court

makes this harmless error determination based upon a review of the entire state court

record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

      If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court must review the claim *de novo* and the deferential

standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th

Cir. 2004).

### III.  MERITS OF REMAINING CLAIM

      As noted above, Mr. Owens contends in claim one that the prosecution's

misstatement of the law during closing arguments regarding the affirmative defense of

insanity, and the trial court's failure to correct it after objection, violated his due process

rights to a fair trial and to present a defense.  In support of this claim Mr. Owens relies

solely on the arguments he presented in state court on direct appeal.  He maintains that

he suffers from AIDS-related dementia and delirium and has a history of abusing

cocaine.  According to Mr. Owens, the prosecution incorrectly told the jury during

rebuttal closing argument that his history of drug use negated the affirmative defense of

insanity.  However, because there was no evidence that he used drugs on the night of

the offense, Mr. Owens contends the jury should have considered whether his AIDS-

related dementia and delirium, either independently or as a component of his mental

functioning, constituted legal insanity for purposes of his affirmative defense.  Mr.

Owens does not contend that the trial court's instructions to the jury regarding the

affirmative defense were incorrect or misstated the law.

The clearly established federal law relevant to a constitutional claim challenging a prosecutor's comments during closing argument is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986).  *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam).  In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial."  *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).  "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Finally, in the specific context of a prosecutor's misstatement of the law during closing argument, it is clear that

> arguments of counsel generally carry less weight with a jury than do instructions from the court.  The former are usually billed in advance to the jury as matters of argument, not evidence, and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.  Arguments of counsel which misstate the law are subject to objection and to correction by the court.  This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court.  And the arguments of counsel, like the instructions of the court, must be judged in the context in which they are made.

*Boyde v. California*, 494 U.S. 370, 384-385 (1990) (citations omitted).

9

The Colorado Court of Appeals reasoned as follows in rejecting Mr. Owens' due process claim premised on the prosecutor's alleged misstatement of the law during rebuttal closing argument:

> Defendant first argues that the prosecution misstated the law concerning the insanity defense during rebuttal closing argument, and the trial court erred in failing to correct it after defense counsel objected. Defendant maintains that these errors deprived him of his rights to due process, to present a defense, and to a fair trial. We are not persuaded.

> A. Standard of Review and Legal Authority

> Contrary to the People's argument, defendant properly preserved this issue in its entirety.

> We review claims of prosecutorial misconduct in closing argument for an abuse of discretion. *People v. Lucas*, 232 F.3d 155, 165 (Colo. App. 2009).

> It is improper for counsel to misstate or misinterpret the law during closing argument. *People v. Rodriguez*, 794 P.2d 965, 977 (Colo. 1990); *People v. Anderson*, 991 P.2d 319, 321 (Colo. App. 1999). "When a court, upon a proper objection, declines to direct the jury that the prosecutor's version of the [jury] instruction is incorrect, the court improperly permits the jury to adopt the prosecutor's version of the law." *Anderson*, 991 P.2d at 321. In such circumstances, reversal is required unless the error is harmless. *Lucas*, 232 P.3d at 165, *Anderson*, 991 P.2d at 321. Thus, we will reverse only "if the error 'substantially influenced the verdict or affected the fairness of the trial proceedings.'" *Hagos v. People*, 2012 CO 63, ¶ 12 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

> In Colorado, a person is legally insane if he or she "is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act," or "suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged." § 16-8-101.5(1)(a)-(b), C.R.S. 2012. "Mental disease or defect" is

10

defined to include "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance."  § 16-8-101.5(2)(b), C.R.S. 2012; *see People v. Grant*, 174 P.3d 798, 810 (Colo. App. 2007) (concluding that the exclusion for voluntary ingestion of intoxicating substances applies to both prongs of the insanity test).

### B.  Analysis

Here, defendant pleaded not guilty by reason of insanity, and the jury was properly instructed on the law described above.  Defendant was examined by a forensic psychiatrist, Dr. Mark Diamond, who diagnosed him with "dementia due to HIV," "delirium due to AIDS," "cocaine intoxication delirium," and "cocaine dependence."  During rebuttal closing argument, the prosecutor stated the following:

> Now, as I understood [defense counsel's] argument . . . we [supposedly] have to prove that the delirium, to the extent you believe he suffered it at all, was only caused by cocaine.  That's not what the definition says.  We do not have to prove that any delirium he allegedly suffered only came from cocaine use. . . .  If any part of this alleged delirium that he suffered was due to the cocaine use, it is not insanity. . . .  So, even if you believe Dr. Diamond's opinion that the defendant had delirium, there is no way, medically or psychologically, to rule out the defendant's history of substance abuse as a contributing factor to his delirium, [and] therefore, you have to conclude that the defendant was sane.

The trial court overruled defendant's objection to this argument.

Defendant contends on appeal that evidence of long-term drug use can be considered along with evidence of other mental conditions to meet the test for insanity.  Thus, he argues that the prosecutor misstated the law on

Colorado's insanity defense, and that the trial court erred in not correcting the misstatement.

Assuming, without deciding, that the prosecutor misstated the law concerning the insanity defense, we conclude that any such error was harmless. Dr. Diamond was the only expert witness to have examined defendant and to offer testimony on defendant's mental condition. The report of Dr. Diamond's examination, which contained his diagnoses and medical opinions on defendant's mental state, was admitted into evidence. The report concludes that,

> although [defendant] does have a mental condition, dementia due to his cocaine use as well as his AIDS status, it did not reach the level of a mental disease or defect that affected his ability to distinguish right from wrong or form the culpable mental state necessary for the crimes charged (insanity criteria).

His opinion, with reasonable medical certainty, was that defendant was legally sane at the time the murders took place.

Dr. Diamond also testified that defendant suffered from both dementia and delirium at the time that the offenses occurred, and that neither condition alone would have satisfied the statutory requirements for insanity. He said that the dementia and delirium were "caused," "triggered," or "worsened" by defendant's drug use, and that defendant's delirium did not meet the definition of a "mental disease or defect" for purposes of the insanity statute because the delirium was partly attributable to his cocaine dependence. The doctor also said he could not determine whether defendant would have been insane at the time the murders took place if his cocaine use was not a factor.

As in *People v. Grenier*, 200 P.3d 1062, 1074 (Colo. App. 2008), we decline to address whether evidence of long-term drug use, when considered with other mental conditions, would establish the insanity defense because none of the mental health professionals who examined or treated defendant indicated that the effects of his long-term

> drug use, combined with his other mental illnesses, rendered him insane.
>
> Moreover, as defendant conceded in his opening brief, the jury was properly instructed on the insanity defense. *See People v. Vanrees*, 125 P.3d 403, 410 (Colo. 2005) ("Jury instructions must be read as a whole, and if, when so read, they adequately inform the jury of the law, there is no reversible error.").
>
> In light of Dr. Diamond's testimony and conclusions, and the fact that the jury was properly instructed, we conclude that any error in the prosecutor's alleged misstatement of the insanity defense did not "substantially influence[] the verdict or affect[] the fairness of the trial proceedings." *Hagos*, ¶ 12.

(ECF No. 11-4 at 4-10.)

Mr. Owens does not contend that the decision of the Colorado Court of Appeals is contrary to *Darden* or any other clearly established federal law. In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case. *See House*, 527 F.3d at 1018. In any event, the Court finds that the state court decision is not contrary to clearly established federal law. *See Jeremiah v. Kemna*, 370 F.3d 806, 809-10 (8th Cir. 2004) (state court decision that prosecutor's misstatement of the law did not prejudice defendant because jury was instructed correctly is not contrary to clearly established federal law).

Mr. Owens also fails to present any argument that demonstrates the state court's ruling is an unreasonable application of *Darden* or any other clearly established federal law. Most importantly, the state court properly relied on the fact that the jury was correctly instructed regarding the affirmative defense of insanity in determining that any

prosecutorial misconduct was harmless.  Under these circumstances, the Court cannot conclude that the state court decision was an unreasonable application of clearly established federal law.  *See Cox v. McNeil*, 638 F.3d 1356, 1361 (11th Cir. 2011) (per curiam) (state court decision that prosecutor's repeated misstatements of the law during voir dire and closing argument were harmless because jury instructions were accurate was not contrary to, or an unreasonable application of, clearly established federal law); *Dagley v. Russo*, 540 F.3d 8, 18-19 (1st Cir. 2008) (state court decision that prosecutor's single, isolated, and unelaborated misstatement to the jury during an extended closing argument that was addressed indirectly by accurate oral and written jury instructions was not an unreasonable application of clearly established federal law); *Williams v. Groose*, 77 F.3d 259, 262 (8th Cir. 1996) (holding that, even if prosecutor's remarks constitute trial error warranting reversal under state law, they did not render trial fundamentally unfair because jury instructions correctly defined reasonable doubt).

In light of the very general *Darden* standard, the Court ultimately cannot conclude that the state court's determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Finally, even if the state court's decision could be considered contrary to or an unreasonable application of clearly established federal law, any error was harmless under *Brecht*.  Once again, the fact that the jury properly was instructed limits the prejudicial impact of the prosecutor's alleged misstatement of law.  Furthermore, as the state court noted, the only medical expert who actually examined Mr. Owens and testified about his mental condition opined that Mr. Owens was legally sane when the

14

murders took place.  Therefore, based on a review of the entire state court record, the Court cannot conclude that any constitutional error with respect to the prosecutor's alleged misstatement of the law during rebuttal closing argument had a substantial and injurious effect on the jury's verdict.  *See Brecht*, 507 U.S. at 637.

## V.  CONCLUSION

In summary, the Court finds that Mr. Owens is not entitled to relief on claim one in the Amended Application.  Accordingly, it is

**ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 6) is denied and this case is dismissed with prejudice.  It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated this 17th day of February, 2016.

BY THE COURT:

William J. Martinez
United States District Judge